# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>GREEN APPLE IPHONE WITH CRACKED SCREEN,<br>located at 302 S. MCNEILL STREET, CARTHAGE, NC<br>28327 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:24MJ213-1 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

GREEN APPLE IPHONE WITH CRACKED SCREEN, located at 302 S. MCNEILL STREET, CARTHAGE, NC 28327

located in the _____Middle_____ District of _____North Carolina_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a) and 846<br>18 USC 1956 and 1957 | Distribution/Possession with Intent to Distribute Controlled Substances and<br>Conspiracy to do the same; and Money Laundering |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____/s/ Tyler Cheek_____
*Applicant's signature*

_____Tyler Cheek Task Force Officer_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: _____05/30/2024   8:35 am_____

*Judge's signature*

City and state: _____Durham, North Carolina_____     Joe L. Webster, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF RED
AND WHITE IPHONE, GREEN IPHONE WITH
CRACKED SCREEN, BLACK IPHONE WITH
WHITE APPLE STICKER ON THE BACK,
AND PURPLE IPHONE IN BLACK CASE,
LOCATED AT 302 S. MCNEILL STREET,
CARTHAGE, NC 28327

Case No. 1:24MJ213-1

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, Tyler Cheek, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3.      I, Tyler Cheek, am a United States Postal Inspection Service ("USPIS") Task Force Officer and have been so employed since 2022. I am currently assigned to the Contraband Interdiction and Investigations Team in Raleigh, North Carolina and am responsible for the investigation of narcotics, drug trafficking organizations, and money laundering. I have received training by the USPIS, and members of the USPIS, in the investigation of controlled substances or

proceeds/payments being transported through the United States. I am a Detective Sergeant with the Moore County Sheriff's Office ("MCSO") and have been a sworn deputy with the MCSO Since May of 2016. I started my career with the MCSO as a Detention Officer at the Moore County Detention Center in May of 2016. I have received over 1,000 hours of law enforcement training. I have received this training from the North Carolina Justice Academy as well as others across the state. In November of 2018 I attended the Federal/State Drug Investigation Training Conference. In September of 2020 I became certified as a Prescription Drug Diversion Investigator. I have assisted other agencies in numerous drug violations and investigations related to the sales and possession of illegal narcotics. I am familiar with the appearance of scheduled prescription pills, powder cocaine, crack cocaine, marijuana, and methamphetamines. I am also familiar in the manner in which all of it is packaged for distribution and sales. In March of 2018 I was promoted to Detective Sergeant and began working with the Narcotic's Division at the MCSO as a Narcotics Investigator. I have been involved in and have assisted in numerous drug investigations and arrests since becoming a Narcotics Investigator.

4.     I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of defendants and witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the use of undercover agents, the use of confidential sources, and the use of court-authorized wire intercepts. This includes investigations of the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substances, possession with the intent

2

to distribute controlled substances, and conspiracy to do the same) and Title 18, United States Code, Sections 1956 and 1957 (money laundering).

5.     I have been involved in the execution of numerous state and federal search warrants related to drug trafficking investigations. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances including through the use of vehicles.

6.     My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: (a) my own involvement in drug investigations and searches during my career as a law enforcement officer, as previously described; (b) what other agents and police officers have advised and related to me about the substance and results of their own drug investigations; and (c) other intelligence information provided through law enforcement channels.

7.     The conclusions and opinions set forth below are based on my experience and training as a law enforcement officer, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. The facts set forth in this Affidavit are known to me as a result of my personal participation in this investigation and through conversations with other federal, state, and local law enforcement officers and personnel. The following is not an exhaustive recitation of the facts agents and officers have learned during the course of this investigation but are the facts that I believe sufficiently establish probable cause. References to law enforcement personnel in this case will generally be referred to as "agents" or "agents/officers," unless specified by name and agency.

3

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      The property to be searched shall be referred to as "**TARGET DEVICE 1,**" "**TARGET DEVICE 2,**" "**TARGET DEVICE 3,**" and "**TARGET DEVICE 4.**" **TARGET DEVICE 1** is a red and white Apple iPhone. **TARGET DEVICE 2** is a green Apple iPhone with a cracked screen. "**TARGET DEVICE 3**" is a black Apple iPhone with a white Apple sticker located on the back. "**TARGET DEVICE 4**" is a purple Apple iPhone with a black case. Photographs of **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** have been attached to this application for further identification.

9.      **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** are currently located at the Moore County Sheriff's Office, 302 South McNeill Street, Carthage, North Carolina 28327.

10.     The applied-for warrant would authorize the forensic examination of **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11.     The USPIS, DEA, Homeland Security Investigations (HSI), and the Federal Bureau of Investigation (FBI), are currently investigating the criminal activities of Nicholas Curry, Cody Curry, Carmen Valenzuela, Sammy Soqui, Anthony Lloyd, Shaina Hunt, Ray Cozart Jr., John Moore, and other co-conspirators, both known and unknown, regarding violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substances, possession with the intent to distribute controlled substances, and conspiracy to do the same) and Title 18, United States Code, Sections 1956 and 1957 (money laundering).

4

12. This is an investigation into a Drug Trafficking Organization (DTO) primarily distributing fentanyl, methamphetamine, and cocaine. Ray Cozart Jr. is believed to be a drug distributor who operates within Montgomery County, North Carolina, and the drugs he obtains are provided by Nicholas Curry, Cody Curry, and Sammy Soqui. This DTO has been confirmed to use the USPS to traffic fentanyl, methamphetamine, and cocaine from Arizona to the Middle District of North Carolina. To date, the investigative team has seized approximately 28.5 kilograms of fentanyl, 75 kilograms of methamphetamine, and 2 kilograms of cocaine, directly attributable to this DTO. Through electronic surveillance, and on-scene surveillance, investigators have learned that the DTO utilizes residences, including 136 Candor Ln, Jackson Springs, NC 27281, as "stash houses" and/or locations that receive drug shipments, store drugs, drug proceeds, records, financial information, and digital media utilized by the DTO.

13. In 2017, Nicholas Curry and Cody Curry were arrested in Arizona in the same criminal conspiracy. In that conspiracy, which led to both men being sentenced to state prison, Nicholas Curry and Cody Curry were using package shipping companies to traffic drugs across the United States. They were sentenced to prison and have since been released from custody.

14. In March 2022, the USPIS began to identify suspected drug packages mailed from Phoenix, Arizona, to multiple areas within the MDNC pertaining to this investigation. Although there are multiple addresses known to the USPIS as receiving related packages, the addresses of 2600 Pennoak Way, Apartment L, Greensboro, North Carolina 27407; 226 Davidson Street, Archdale, North Carolina 27263; 1700 Fairview Street, Apartment 164, Greensboro, North Carolina 27405; and 5328 West Market Street, Apartment 12A, Greensboro, North Carolina 27409, are specific for the purpose of this affidavit. There is probable cause to believe Ray Cozart

5

Jr., at 136 Candor Ln, Jackson Springs, NC 27281, is monitoring and coordinating packages suspected and confirmed to contain drugs.

15.     The USPIS routinely sees that DTOs will mail drugs through the USPS to non-source state locations. The drug proceeds are then mailed back to the source state from where the identified drug packages were mailed. From reviewing USPS business records, the USPIS identified packages suspected to contain drug proceeds mailed from the MDNC to multiple addresses in Phoenix, Arizona. The packages suspected to contain drug proceeds were found to be mailed both before and after suspected and confirmed drug packages were mailed to the MDNC.

16.     In or around February 2023, the USPIS began to conduct federal search warrants on packages mailed from the MDNC back to Arizona. To date, the USPIS has conducted eight warrants on these packages, all of which contained bulk U.S. currency, and were in transit to Carmen Valenzuela in Arizona. The combined total of all eight packages is $273,910.00. The search warrants obtained authorized the USPIS to remove the internal packaging materials, replace them with similar or replica materials, and return the packages to the mail stream, thus allowing the USPIS to identify DTO members and money couriers to further identify those involved in the ongoing conspiracy. This led to many latent fingerprints belonging to Nicholas Curry to be recovered from several of these packages confirmed to contain bulk U.S. currency.

17.     The investigative team has conducted numerous surveillance operations on packages mailed from Phoenix, Arizona, to addresses within the MDNC. On multiple occasions, Curry and Lloyd have been observed picking up the packages and transporting them to secondary "stash" locations within the MDNC. This includes, but is not limited to, 5328 West Market Street, Apartment 12A, Greensboro, North Carolina 27409. The USPIS obtained multiple pen register

6

and trap and trace authorizations for both Nicholas Curry's and Cody Curry's known cellular devices.

18.     The USPIS identified suspected drug packages being mailed from Arizona to 2600 Pennoak Way, Apartment L, Greensboro, North Carolina 27407; 226 Davidson Street, Archdale, North Carolina 27263; 1700 Fairview Street, Apartment 164, Greensboro, North Carolina 27405; and 5328 West Market Street, Apartment 12A, Greensboro, North Carolina 27409. A review of USPS business records pertaining to 2600 Pennoak Way, Apartment L, found that three packages had been mailed to this address between February 2024 and May 2024. Two of the three packages mailed to 2600 Pennoak Way, Apartment L, were confirmed to be actively monitored by a River Street Network IP address at 136 Candor Ln, Jackson Springs, NC 27281. As noted below, one of these packages, monitored at 136 Candor Ln, Jackson Springs, NC 27281, was confirmed to contain approximately 1 kilogram of cocaine, 4 pounds of methamphetamine, and 208 grams of fentanyl.

19.     A review of USPS business records found that 14 packages originating in Arizona have been mailed to 226 Davidson Street between June 2022 and April 2024. In this same period, five packages were mailed from California to 226 Davidson Street, four from Salinas and one from Beaumont. A review of 1700 Fairview Avenue, Apartment 164, found that one package, which originated from Arizona, had been mailed there in March 2024.

20.     A review of USPS business records pertaining to 5328 West Market Street, Apartment 12A, found that three packages originating in Arizona were mailed there between December 2023 and January 2024. As noted below, one of the packages was seized in transit to 5328 West Market Street, Apartment 12A, and it was found to contain eight pounds of

7

methamphetamine. This was a known and identified "stash" location of Nicholas Curry and Anthony Lloyd.

21.     On September 5, 2023, Priority Mail package 9505 5137 1921 3248 4529 30 (Subject Package 1) and Priority Mail package 9505 5137 1921 3248 4529 54 (Subject Package 2) were identified in transit to 5238 Hilltop Road, Apartment M, Jamestown, North Carolina 27282. Both packages were mailed from Tolleson, Arizona. This was a previously identified address and Nicholas Curry and Anthony Lloyd had previously been observed picking up suspected drug packages from this location and transporting them to secondary "stash" locations. Both packages were addressed from "Sean Gasper" with the sender's address of 13511 West Peck Drive, Litchfield Park, Arizona 85340. Both packages were addressed to "Giselle Davies" at 5238 Hilltop Road, Apartment M. A review of law enforcement databases determined both names were fictitious and did not associate with either address.

22.     On September 7, 2023, the investigative team conducted surveillance on the delivery of both Subject Package 1 and Subject Package 2. After the packages were delivered by an unwitting USPS Letter Carrier, Nicholas Curry was observed picking up both packages in a rental vehicle. Curry conducted extensive countersurveillance to the point the investigative team made the decision to stop physically following him and rely on geo-location data of his cellular device. The geo-location data placed Curry in the vicinity of 5328 West Market Street. The surveillance team was later able to observe Curry exiting building 12. It was later determined from physical surveillance and coordination with apartment management that a female had rented 5328 West Market Street, Apartment 12A, on behalf of Anthony Lloyd.

23.     On October 10, 2023, the USPIS from North Carolina executed a search warrant at Carmen Valenzuela's residence in Arizona, as it pertains to this investigation. Seized from the

8

residence was $100,500.00, over 26 pounds of fentanyl, 10 pounds of methamphetamine, and USPS shipping materials. The investigation has determined the drugs seized from within Valenzuela's residence were destined to the Middle District of North Carolina.

24.     On January 31, 2024, Priority Mail package 9505 5126 9088 4031 6252 52 (Subject Package 3) was identified in transit to 1700 Fairview Street, Apartment 164. Subject Package 3 was mailed from Phoenix, Arizona. A review of the package found it was addressed from "Zach Bogart 308 E Charleston Ave, Phoenix AZ, 85022," and addressed to "Debra Bogart at 1700 Fairview St, Apt 164, Greensboro, NC 27405." A review of law enforcement databases found that both names were fictitious and did not associate with either address.

25.     On February 1, 2024, Priority Mail package 9505 5110 2621 4031 5900 85 (Subject Package 4) was identified in transit to 5328 West Market Street, Apartment 12A. Subject Package 4 was mailed from Phoenix, Arizona. Subject Package 4 was found to be addressed from "David Roman 15849 N. 9th Ave, Phoenix, AZ 85023," and addressed to "Kaitlin Roman 5238 W. Market St, Apt 12A, Greensboro, NC 27409." A review of law enforcement databases found that both names were fictitious and did not associate with either address.

26.     The USPIS later reviewed business records pertaining to Subject Package 3 and Subject Package 4. Subject Package 3 was mailed 38 minutes after Subject Package 4 was mailed from the exact same USPS Post Office in Phoenix, Arizona. The USPIS routinely sees this in their investigation into those who use the USPS to traffic drugs. This is done in an effort to evade law enforcement detection and prevent the interdiction of drug packages.

27.     On February 1, 2024, the Montgomery County Sheriff's Office executed a search warrant at 136 Candor Ln, Jackson Springs, NC 27281. The Montgomery County Sheriff's Office knew 136 Candor Ln, Jackson Springs, NC 27281 to be used by Ray Cozart Jr. and John Moore

as a distribution point for fentanyl. The investigating detective used a Confidential Source (CS) to make multiple purchases of fentanyl from Moore at 136 Candor Ln, Jackson Springs, NC 27281. Present at 136 Candor Ln, Jackson Springs, NC 27281 during the execution of the search warrant was Cozart Jr., Dwight Ellis, Azaria Berret, Jackie Moore, and John Moore. A search of the residence led to the recovery of multiple firearms, methamphetamine, and fentanyl. Some of the methamphetamine recovered from the residence was located within a vehicle on the property registered to Cozart Jr. Cozart Jr., Ellis, and Berret, were arrested and charged with weapon and drug offenses. While at the jail, Ellis assaulted the arresting detective and Cozart Jr. threatened to physically harm the same detective.

28. On February 2, 2024, the investigative team conducted surveillance on the delivery of Subject Package 3. The investigative team observed an unwitting USPS Letter Carrier deliver Subject Package 3 to the front desk of the apartment complex and not to the listed apartment. The USPIS confirmed that packages delivered to the apartment complex are delivered to the front desk. After delivery, the package is placed inside of a separate package delivery room that requires a residential key to enter. It was confirmed the package delivery room had multiple entrances that could not be watched by the investigative team. Due to not being able to observe this location, the surveillance operation was later terminated.

29. On February 2, 2024, the Honorable United States Magistrate Judge Joe L. Webster issued a search warrant (1:24MJ40-1) for Subject Package 4. Upon conducting a search of this package, it was found to contain approximately eight pounds of methamphetamine. Cody Curry was confirmed to be actively monitoring and inquiring into the delivery status of Subject Package 4. Forty-eight fingerprints of Sammy Soqui were recovered from within this package. Soqui is a

10

known associate of Cody Curry and Nicholas Curry and a previously identified member of this DTO.

30.    On February 2, 2024, the investigative team conducted an enforcement operation on Nicholas Curry in the Middle District of North Carolina. Credible information was received that Nicholas Curry was in Atlanta, Georgia, and would be picking up a large quantity of methamphetamine and transporting it to Greensboro. From monitoring the geo-location data of Nicholas Curry, he was subject to a traffic stop in Randolph County. A search of the vehicle led to the seizure of approximately 22 pounds of methamphetamine.

31.    On February 3, 2024, the USPIS, HSI, and the Greensboro Police Department executed a state search warrant at 5328 West Market Street, Apartment 12A, as it pertains to this ongoing conspiracy investigation. Kimberly Ingram,[1] the paramour of Anthony Lloyd, was inside the apartment. Seized from the residence was one kilogram press, metal stamps for kilograms, digital scales, a blender, spoon, vacuum sealed bags with a visible white substance, and other items of evidence related to drug packaging, distribution, and trafficking. Mail was located inside of 5328 West Market Street, Apartment 12A, which was addressed to Kimberly Ingram at 226 Davidson Street.

32.    On February 25, 2024, Priority Mail package 9505 5123 7586 4055 1406 14 (Subject Package 5) was identified in transit to 226 Davidson Street. Subject Package 5 was addressed from "Hector Garcia 2230 S Wineta St, Phoenix, AZ 85006," and addressed to "Shery

---

[1] When law enforcement initially encountered Ingram within the apartment, she identified herself as "Kaitlin Roman." This is significant, as this was the fictitious name listed as the recipient on Subject Package 4. Ingram maintained that she was "Kaitlin Roman" for an extended period until confronted by law enforcement about her true identity.

11

Whaley 226 Davidson St, Archdale, NC 27263." A review of available law enforcement databases determined both names were fictitious and did not associate with either address.

33.     On February 27, 2024, members of the USPIS and DEA conducted surveillance on the delivery of Subject Package 5. After the package was delivered to the front porch, the known resident of 226 Davidson Street arrived home, looked at the package on the porch, and entered the residence without touching Subject Package 5. Approximately 20 minutes later, a Nissan passenger car, North Carolina license plate: FHS-4951, arrived and parked in front of 226 Davidson Street. This vehicle was confirmed to be registered to Shaina Hunt at 5809 Garden Village Court, Apartment H, Greensboro, North Carolina 27410. Hunt was observed exiting the vehicle, retrieving Subject Package 5 from the front porch, and placing it within the Nissan. Hunt then departed the area.

34.     The surveillance team followed Hunt as she traveled to the CVS Pharmacy, located at 10100 S. Main Street, Archdale, North Carolina 27263. Hunt entered the store and departed shortly thereafter. Subject Package 5 remained inside of her vehicle. Hunt was then followed to her apartment at 5809 Garden Village Court, Apartment H. Hunt was observed retrieving Subject Package 5 from her vehicle and then transporting the package inside of her residence. Shortly thereafter, the surveillance operation was terminated.

35.    In March 2024, members of the USPIS, HSI, DEA, and FBI, conducted an interview of a cooperating defendant (CD1),[2] who is in custody for drug trafficking. CD1 confirmed Ray Cozart Jr. is a drug distributor whose base of operations is in Candor, North Carolina. CD1 confirmed he/she had provided large quantities of drugs to Ray Cozart Jr. on multiple occasions for him to distribute.

36.    This information was further corroborated from a review of CashApp business records. The records provided by CashApp reflect Ray Cozart Jr. transferred $3,000.00, in two separate transactions, to Honora Smith, the known significant other of Nicholas Curry. Both transactions occurred in April 2022 in a two-day period. Ray Cozart Jr. was found to have transferred $1,800.00 to Carmen Valenzuela, in two separate transactions, in January 2022 and June 2022. An additional four transactions were attempted from Ray Cozart Jr. to Valenzuela, in this same time period, totaling $1,590.00, which were declined due to exceeding the monthly transaction amount.

37.    On March 16, 2024, Priority Mail package 9505 5102 6894 4076 0337 31 (Subject Package 6) was mailed from Salinas, California, to 1700 Fairview Street, Apartment 164. USPS business records reflect Subject Package 6 was addressed from "Joseph macias 348 Williams Rd Salinas Ca 93905," and addressed to "Debra Brown 1700 FairView St apt 164 Greensboro, NC

---

[2] CD1 is a convicted felon and has multiple pending felony charges. CD1 has provided information that has been independently verified by the USPIS, HSI, DEA, and the FBI, through physical surveillance, electronic surveillance, pen registers, USPS business records, confidential source interviews, suspect interviews, and multiple law enforcement databases. Most of the information provided by CD1 was known to the agencies prior to CD1 agreeing to cooperate with law enforcement. CD1 has provided substantial information against self-interest in the hopes of receiving leniency in his/her criminal case.

27405." A review of law enforcement databases was conducted, and both names were found to be fictitious and did not associate with either address.

38.     On March 22, 2024, Priority Mail package 9505 5128 5588 4080 6090 86 (Subject Package 7) was mailed from Tucson, Arizona, to 226 Davidson Street. USPS business records reflect Subject Package 7 was addressed from "2060 N Center St mesa, AZ 85201 Jhon Hunt," and addressed to "Sheryl Whaley 226 Davidson St Archdale NC 27263." A review of law enforcement databases was conducted, and both names were found to be fictitious and did not associate with either address.

39.     On April 20, 2024, Priority Mail package 9505 5123 7588 4110 3188 57 (Subject Package 8) was mailed from Arizona and identified in transit to 226 Davidson Street. This package was later confirmed to be addressed from "Alexander Morales 9638 s 43rd Place Phoenix, AZ 85044," and addressed to "Janice whaley 226 Davidson st Archdale, NC 27263." A review of available law enforcement databases confirmed both names were fictitious and did not associate with either address.

40.     On April 23, 2024, the Honorable United States Magistrate Judge L. Patrick Auld issued a search warrant (1:24 MJ 155) for 5809 Garden Village Court, Apartment H.

41.     On April 23, 2024, the USPIS identified Priority Mail package 9505 5125 0221 4113 9245 71 (Subject Package 9) mailed from Arizona and identified in transit to 2600 Pennoak Way, Apt L, Greensboro, NC 27407. Subject Package 9 was found to be addressed from "Carl Bowden 7717 E Mary, Tucson, AZ 85730," and addressed to "Daniel Bowden 2600 Pennoak way apt#L Greensboro NC 27407." A review of available law enforcement databases found both names to be fictitious.

14

42.     On April 24, 2024, Inspector A. Pollard, acting in the capacity of an undercover USPS Letter Carrier, delivered Subject Package 8 to 226 Davidson Street. After the package was delivered to the front porch, Shaina Hunt arrived to the residence and retrieved Subject Package 8 from the front porch. Hunt was later subject to a traffic stop on I-85N. Upon conducting a probable cause search of the vehicle, Subject Package 8 was found to contain approximately 542 grams of M30 fentanyl pills.

43.     Upon executing the search warrant at Hunt's residence, multiple items of evidence were seized. This included approximately 682 grams of fentanyl powder, a firearm, jewelry, U.S. currency, and two drug ledgers.

44.     On April 25, 2024, members of the investigative team conducted surveillance on the delivery of Subject Package 9. Inspector Pollard again delivered this package in the capacity of an undercover USPS Letter Carrier. Due to the apartment building being locked, Inspector Pollard ringed the doorbell for Apartment L to be allowed entry. An unknown black female opened the secured apartment building door and took possession of Subject Package 9. While taking possession of the package, the female was looking around the parking lot. While this occurred, TFO Cheek entered the apartment building in an attempt to identify the apartment in which Subject Package 9 was taken to. The female was holding Subject Package 9 and continued to stare at TFO Cheek until he disappeared out of her view and walked downstairs. TFO Cheek was unable to determine what apartment the female entered with Subject Package 9.

45.     The investigative team continued to conduct surveillance on the apartment building in an effort to determine who arrived to take possession of Subject Package 9. The unidentified female was observed exiting the apartment building and walking around in the parking lot. At one point she walked towards the dumpsters and remained stationary. She continued to look around

15

the parking lot, in what the investigative team believes was an attempt to identify any surveillance units in the area. In an effort not to reveal law enforcement presence, and to avoid jeopardizing the criminal investigation, the surveillance operation was terminated. It is your affiant's belief that the reason for the female to conduct such substantial countersurveillance is more than likely due to members of the DTO being aware Shaina Hunt was arrested and a search warrant had been executed at her residence.

46.     I conducted a review of USPS business records pertaining to Subject Package 9. It was confirmed that a River Street Networks IP address was monitoring the delivery status of Subject Package 9. More specifically, this IP actively inquired into the delivery status of Subject Package 9 a total of 29 times between April 24, 2024, and April 25, 2024. River Street Networks was provided with an administrative subpoena. The River Street Networks account was confirmed to be subscribed to Robert Chandler at 136 Candor Ln, Jackson Springs, NC 27281. According to the account comments provided by River Street Networks, John and Jackie Moore have called in numerous times to make payment on the account to provide service for 136 Candor Ln, Jackson Springs, NC 27281. As previously noted, John Moore has been identified as a fentanyl distributor and has been confirmed to distribute those drugs from 136 Candor Ln, Jackson Springs, NC 27281.

47.     In May 2024, members of the investigative team conducted an interview of cooperating defendant 2 (CD2), who is in custody for felony offenses. In May 2024, Cody Curry informed CD2 that Ray Cozart Jr. was receiving packages containing drugs from Arizona. CD2 confirmed Ray Cozart Jr. was a large-scale drug distributor for the DTO and his base of operations

16

was located in Candor, North Carolina.[3]  Pen register information confirms Cody Curry and Cozart, Jr. were in communication on numerous occasions in the spring of 2024.

48.      On May 7, 2024, Priority Mail package 9505 5126 2890 4128 2915 42 (Subject Package 10) was identified in transit to 2600 Pennoak Way, Apartment L.  Subject Package 10 was mailed from Arizona.  Subject Package 10 was found to be addressed from, "Allen Bowden 9330 E Hermosa Hills, Tucson, AZ 85710," and addressed to "Janet Bowden 2600 Pennoak Way Apt # L, Greensboro NC 27407."  As with the previously identified packages, both names were found to be fictitious and did not associate with either address.

49.      On May 10, 2024, the Honorable United States Magistrate Judge Joe L. Webster issued a search warrant (1:24MJ179-1) for Subject Package 10.  A search of this package led to the recovery of approximately four pounds of methamphetamine, one kilogram of cocaine, and 208 grams of M30 fentanyl pills.

50.      I conducted a review of USPS business records pertaining to Subject Package 10. It was confirmed that a River Street Networks IP address was monitoring the delivery status of Subject Package 10.  More specifically, this IP inquired into the delivery status of Subject Package 10 a total of 256 times between May 8, 2024, and May 20, 2024.  River Street Networks was provided with an administrative subpoena.  The River Street Networks account was confirmed to be subscribed to Robert Chandler at 136 Candor Ln, Jackson Springs, NC 27281.

---

[3] CD2 is a convicted felon. CD2 has provided information that has been independently verified by the USPIS, HSI, DEA, and the FBI, through physical surveillance, electronic surveillance, pen registers, USPS business records, confidential source interviews, suspect interviews, and multiple law enforcement databases. Most of the information provided by CD2 was known to the agencies prior to CD2 agreeing to cooperate with law enforcement. CD2 has provided substantial information against self-interest in the hopes of receiving leniency in his/her criminal case.

17

51.     Over the course of this investigation, multiple subpoenas have been issued to obtain electronic subscriber information, to include cell phone subscriber information, cell phone toll records, and IP subscriber information. The USPS has confirmed digital devices belonging to Cody Curry in Arizona were digitally inquiring into the delivery status of Subject Package 4, confirmed to contain methamphetamine. River Street Networks confirmed through subpoena response that the IP inquiring into the delivery status of Subject Package 9 and Subject Package 10 is subscribed to 136 Candor Ln, Jackson Springs, NC 27281. IPs subscribed to 136 Candor Ln, Jackson Springs, NC 27281 inquired into the delivery status of both packages no less than 285 times between April 24, 2024, and May 20, 2024.

52.     Ray Cozart Jr. and John Moore are involved in an ongoing criminal conspiracy that involves Nicholas Curry and Cody Curry to distribute drugs through shipping companies, to include the USPS. Since April 2024, a person or people have been using 136 Candor Ln, Jackson Springs, NC 27281 to monitor and coordinate the shipment of packages suspected and confirmed to contain drugs. Ray Cozart Jr. and John Moore are also suspected to be using 136 Candor Ln, Jackson Springs, NC 27281 to store and sell drugs from, which is evident from the search warrant executed there in February 2024. It has been confirmed that a person(s) is using electronic devices/internet subscribed to 136 Candor Ln, Jackson Springs, NC 27281, to coordinate and plan the shipment of suspected and confirmed drug shipments to the Middle District of North Carolina.

53.     On May 24, 2024, the Honorable United States Magistrate Judge Joe L. Webster issued a search warrant (1:24MJ208-1) for Ray Cozart Jr.'s residence, located at 136 Candor Lane, Jackson Springs, NC 27281.

54.     On May 28, 2024, the USPIS, HSI, Montgomery County Sheriff's Office and Stanley County Sheriff's Office conducted a search warrant at 136 Candor Ln, Jackson Springs,

18

NC 27281. Stanley County Sheriff's Office SWAT executed the search warrant at 6:20 am. Located inside the residence was Ray Cozart Jr., Azaria Barrett, Johnny Moore, Jackie Moore, Sarah Crump and two children. Once everyone was brought outside, Cozart Jr. started to get verbally aggressive and began threatening members of law enforcement. Cozart Jr. told a Deputy that he would be released from custody by the end of the day, and when released, was going to go to the Deputy's house and "exterminate" him and his entire family. Cozart Jr. was placed in the rear of a patrol car. While Cozart Jr. was being placed in the back of the patrol car, he assaulted law enforcement and spit in the face of a Stanley County Sheriff's Office Deputy. Cozart Jr. was arrested for multiple state felony offenses.

55. While searching the residence, one of the bedrooms located had Ray Cozart Jr.'s ID card and paperwork belonging to Azaria Barrett in the bedroom. Located in the bedroom was **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3** and **TARGET DEVICE 4.**

56. Based on my training, experience, and knowledge of this case, I know that drug traffickers regularly communicate utilizing cellular telephones, such as **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3** and **TARGET DEVICE 4**, to coordinate drug transactions with drug customers and drug sources of supply. Additionally based on my training, experience, and knowledge of this case, I believe that Ray Cozart Jr is using **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** to coordinate drug sales and drug shipments. It is my belief that Ray Cozart Jr will have communication within **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** regarding packages that contain drugs and/or money.

19

57.     Based on the information provided in this application, I submit there is probable cause to believe **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** will contain evidence of drug trafficking conducted by Ray Cozart Jr and co-conspirators both known and unknown to law enforcement. **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** are currently in storage at the Moore County Sheriff's Office, 302 South McNeill Street, Carthage, North Carolina 28327. In my training and experience, I know that **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** first came into the possession of the USPIS.

## TECHNICAL TERMS

58.     Based on my training and experience, I use the following technical term to convey the following meaning:

      a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text

messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

59.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

60.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** because:

   a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

21

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

61.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4**, consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** to human inspection in order to determine whether it is evidence described by the warrant.

22

62.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

63.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Tyler Cheek
Tyler Cheek
Task Force Officer
U.S. Postal Inspection Service

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 30th day of May, 2024, at 8:35 a.m.

Honorable Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina

23

## ATTACHMENT A

The property to be searched is as follows:

a. **TARGET DEVICE 1**: A red and white Apple iPhone.



b. **TARGET DEVICE 2**: Green Apple iPhone with cracked screen.



c. **TARGET DEVICE 3**: Black Apple iPhone with white apple sticker on the back.



d. **TARGET DEVICE 4**: Purple Apple iPhone with a black case.



**TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** at the Moore County Sheriff's Office, 302 South McNeill Street, Carthage, North Carolina 28327. This warrant authorizes the forensic examination of **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** for the purpose of identifying the electronically stored information described in Attachment B.

2

**ATTACHMENT B**

1.      All records on **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** described in Attachment A that reference or reveal violations of Title 21 United States Code Sections 846 and 841 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same) and Title 18, United States Code, Sections 1956 and 1957 (money laundering):

   a.  Electronic communications between co-conspirators both known and unknown;

   b.  lists of customers and related identifying information;

   c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d.  any information referencing or revealing sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

   e.  all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.